UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
AHMAD M. RAAD,                      )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   Civil Action No. 11-11791-DJC
                                    )
LIME FINANCIAL SERVICES, LTD.,      )
and VANDERBILT MORTGAGE             )
FINANCE, INC.,                      )
                                    )
            Defendants.             )
                                    )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                              September 28, 2012

### I.   Introduction

Plaintiff Ahmad M. Raad ("Raad") brings this action against Defendants Lime Financial Services, Ltd. ("Lime") and Vanderbilt Mortgage Finance, Inc. ("Vanderbilt") alleging violations of federal and state law in connection with the issuance of a loan and its subsequent modification that Raad used to refinance the mortgage on his residence. Defendant Vanderbilt has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, Vanderbilt's motion to dismiss is GRANTED in part and DENIED in part.

### II.  Factual Allegations

The Court accepts the following allegations from Raad's amended complaint as true, Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011), and "draw[s] all

1

reasonable inferences in favor of the plaintiff[]." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).

On April 20, 2007, Raad purchased the residence at 21 Marie Drive, Andover, Massachusetts (the "Property"). D. 5 ¶ 4. To finance this purchase, he took out a purchase money loan for the amount of $616,500.00 from Equifirst Corporation. Id. ¶ 5. This loan was secured by a mortgage (the "April 2007 Mortgage") on the Property. Id. A few months later, on August 8, 2007, Raad refinanced his property by taking out a new loan from defendant Lime with an initial principal balance of $650,750.00. Id. ¶ 6. This loan was secured by a new mortgage (the "August 2007 Mortgage") on the Property and the original April 2007 Mortgage was discharged. Id. ¶ 5-6.

In connection with the August 2007 Mortgage, Raad was given copies of documents regarding the terms and details of the loan transaction. Id. ¶ 8. Raad alleges that these documents contained various misstatements and omissions:

> "a. On the form titled, 'Itemization of Amount Financed,' the amount states as a payoff to HomeEq Services the amount of $625,085.00. However, according to the 'Settlement Statement,' [l]ine 104, the amount paid to HomeEq was $623,944.74.
>
> b. On the form titled, 'Itemization of Amount Financed,' the amount stated as 'recording fees' is $500.00. However, the total recording fees as stated on the 'Settlement Statement,' [l]ines 1201 and 1204, is $240.00.
>
> c. Raad was provided with two copies of a 'Notice of Right to Cancel' . . . neither of which state the date of the transaction or the ending date of the period in which Raad could cancel the transaction.
>
> d. The 'Itemization of Amount Financed' shows a $300.00 appraisal fee as being paid on Raad's behalf to others . . . However, Raad himself paid this amount.
>
> e. The 'Itemization of Amount Financed' shows an amount of $818.00 described as a '[p]ayoff to the City of Boston.' The 'Settlement Statement,' [l]ine 1303, shows the same item. However, Raad notified the office of the closing attorney that this amount had been paid years earlier. Nonetheless, the $818.00 apparently was deducted from the amount which should otherwise have been paid to Raad.

>f. The 'Itemization of Amount Financed' states the amount financed as $645,467.72, which is the same figure for the 'amount financed' stated on the form[] titled 'Federal Truth-in-Lending Disclosure' statement provided to Raad at the closing.  However, all of the individual items stated on the 'Itemization of Amount Financed' total $633,485.00, of which $5,282.28 are shown as being included in the finance charge for this transaction. Thus, according to the 'Itemization of Amount Financed,' the total being paid on Raad's account/paid to others on behalf totals $628,203.00.  When this amount is added to the amount of $19,407.66 shown on the 'Settlement Statement' as being paid to Raad, the total of the amounts being paid . . . should have equaled $647,610.66.  This would have . . . resulted in the lender being able to charge Raad only $3,139.34 as finance charges (the difference between $647,610.66 and the loan amount of $650,750.00).  As noted above, the lender in fact charged $5,282.28 as finance charges."

Id. ¶ 8.  Sometime before February 26, 2009, defendant Vanderbilt became the holder of the August 2007 Mortgage.  Id. ¶ 10.  On February 26, 2009, Raad received a document entitled "Modification to Promissory Note to Provide for Reduced Interest Rate and Revised Repayment (Including Establishment of Balloon Payment)" from Vanderbilt.  Id. ¶ 11.  Raad signed and returned this document, thereby modifying the terms of his existing loan (the "February 2009 Modification").  Id.  Along with the modification document, Raad also received two copies of a "Notice of Right to Cancel," which Raad acknowledged having received in writing. The notices stated:

>"You are entering into a transaction that will result in a mortgage, lien or security interest on/in your home.  You have a legal right under federal law to cancel this transaction without cost, within three business days from whichever of the following events occur last:
>
>>(7) the date of this transaction, which is 2/26/2009; or
>>(8) the date you received your Truth in Lending disclosures, or
>>(9) the date you received this notice of your right to cancel."

Id. ¶ 11-12.  Raad has never received any Truth in Lending disclosures pertaining to the February 2009 Modification.  Id. ¶ 14.

On March 29, 2011, Vanderbilt, through counsel, sent a letter to Raad threatening to foreclose on the August 2007 mortgage.  Id. ¶ 16.  On May 23, 2011, Raad, through counsel, sent

Lime and Vanderbilt a letter stating that Raad was rescinding the August 2007 Mortgage. Id. ¶ 17.[1] On June 23, 2011, Vanderbilt became the purported holder of record of the August 2007 Mortgage. Id. ¶ 18. On August 15, 2011, Raad sent by certified mail the "Notice of Right to Cancel" that he had received as part of the February 2009 Modification and a letter stating that Raad was rescinding the February 2009 Modification to Vanderbilt. Id. ¶ 19.

### III.    Procedural History

On August 19, 2011, Raad filed a complaint against Lime and Vanderbilt in the Essex Superior Court. D. 4. On October 11, 2011, Vanderbilt removed the matter to federal court.[2] D. 1. On October 13, 2011, Vanderbilt moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). D. 2. On October 27, 2011, Raad filed an opposition to that motion and an amended complaint that was substantially the same as his original complaint. D. 5, 6.

In his amended complaint, as to the August 2007 Mortgage, Raad alleges that Lime violated the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. L. c. 140D, § 1 et seq., and the Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., by having failed to give Raad a proper "Notice of Right to Cancel" and by having failed to provide Raad with adequate and correct information regarding his loan. D. 5. ¶¶ 21-23, 29-31. He also alleges that under both Massachusetts and Federal law his right to rescind the August 2007 Mortgage transaction "may be exercised at any time by way of recoupment as a defense to foreclosure." Id. ¶¶ 24, 32. He also alleges that he has already rescinded the August 2007

---

[1] Raad states in his amended complaint that "[b]y a letter to Lime and Vanderbilt, dated May 23, 2011, Raad, through his attorney, rescinded the April 2007 Mortgage." D. 5 at ¶ 17 (emphasis added). The Court assumes, to Raad's benefit, that this is a typographical error and that Raad wrote to rescind the August 2007 mortgage. Raad earlier alleges, and this Court assumes as true, that the April 2007 mortgage had already been discharged as part of the August 2007 refinance transaction. Neither party submitted additional documentation related to any of the transactions at issue with the pleadings.

[2] Lime has not been served and has not appeared in this matter. In its notice of removal, Vanderbilt reports that Raad's counsel has been unable to locate Lime. There is some suggestion in the record that Lime is no longer in business. D. 1 ex. B.

Mortgage and that Lime and Vanderbilt are in violation of law by not having "taken any action to reflect the termination of the security interest in Plaintiff's property or to return to Plaintiff all money or property given by him to anyone." Id. ¶¶ 26, 34.  Raad also seeks a "determination as to whether [he] terminated" the August 2007 Mortgage, id. ¶ 39A, "a decree discharging the August 2007 Mortgage," id. ¶ 39B, or in the event that Raad has not terminated the August 2007 Mortgage, a "determination by this Court of the amount, if any, that is due from [Raad] . . . and for a decree of redemption of the August 2007 Mortgage," id. ¶ 39C.  Raad alleges and seeks unspecified damages and requests such relief as the Court deems appropriate.  Id. ¶¶ 27, 35, 39D, E.

In his amended complaint, as to the February 2009 Modification, Raad alleges that "the time permitted by agreement of the parties for Raad to rescind the [February] 2009 Modification has not expired," id. ¶ 14, and that he in fact rescinded the modification by his August 2011 certified letter to Vanderbilt, id. ¶ 19.  Raad seeks a declaration that he was entitled to rescind the February 2009 Modification, and "consequently, by reference, the [August] 2007 Mortgage," Opp. Mot. Dis. D. 9 at 3, because the time to cancel the transaction has not expired.

On November 10, 2011, Vanderbilt filed a motion to dismiss the amended complaint.  D. 7.  On November 22, 2011, Raad filed his opposition.  D. 9.  The Court denied the motion to dismiss the original complaint as moot, 12/14/2011 docket entry, and after a hearing on Vanderbilt's motion to dismiss the amended complaint, took the matter under advisement.  D. 10.

**IV.  Discussion**

To decide a motion dismiss, the Court must determine if the well-pled facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d

50, 55 (1st Cir. 2012). Stated differently, on the plaintiff's view of the facts, the Court should be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see Ocasio–Hernández, 640 F.3d at 12.

As grounds to dismiss, Vanderbilt denies that Raad has already rescinded his mortgage; and that Raad's TILA claims are time barred by TILA's three-year "statute of repose"; that Raad must have alleged, and did not allege, the ability to tender the consideration he received in 2007 (here, the loan proceeds paid out both on Raad's behalf and to Raad) to rescind the August 2007 Mortgage transaction; that Raad has no right of recoupment; that Raad's claims regarding the inadequacy of the disclosures provided to Raad as part of the August 2007 Mortgage transaction fail as a matter of law; and that Raad's claims based upon the February 2009 Modification fail because that transaction is exempt from requiring new disclosures. D. 8 at 2, 4.

### A.     Raad Has Not Rescinded His Mortgage

Raad asserts that he has rescinded his August 2007 Mortgage. D. 5 ¶ 17, 19; D. 9 at 3. He has not, as simply saying so does not make it so. The mere assertion of the right of rescission, by itself, does not void a security interest. In re Cromwell, 461 B.R. 90, 130 (Bankr. D. Mass. 2011) (citing Large v. Conseco Fin. Servicing Corp., 292 F.3d 49, 54-55 (1st Cir. 2002)), rev'd on other grounds sub. nom. Cromwell v. Countrywide Home Loans, Inc., 2012 WL 4127910, at *8 (D. Mass. Sept. 20, 2012) (affirming bankruptcy court's order that the court need not condition rescission on tender provided that plaintiff met requirements for rescission under TILA and MCCCDA). "If a lender disputes a borrower's purported right to rescind, the designated decision maker . . . must decide whether the conditions for rescission have been met. Until such decision is made, [the borrower has] only advanced a claim seeking rescission. The agreement remains in force . . . ." Large, 292 F.3d at 55.

There is no common law right in Massachusetts to rescind a loan contract absent a showing of justifiable reliance on fraudulent material misrepresentations. Elias Bros. Rests., Inc. v. Acorn Enters., Inc., 831 F. Supp. 920, 927 (D. Mass. 1993) (quoting McGrath v. C.T. Sherer Co., 291 Mass. 35, 58 (1935)). That situation is not alleged here, and so Raad's attempt to rescind must have a statutory basis.

B.   **Raad's TILA Claims are Time Barred**

Raad alleges a right to rescind under 15 U.S.C. § 1601 et seq., known as the Truth in Lending Act ("TILA"). The Court has serious doubts that TILA is even applicable in this case.[3] Even if it is, the right of rescission lasts three years after consummation of the loan transaction where material disclosures are incorrect or not provided. 15 U.S.C. § 1635(f); see Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998) ("[Section] 1635(f) completely extinguishes the right of rescission at the end of the 3-year period"). Raad's August 2007 Mortgage transaction occurred on August 8, 2007. Raad filed this present action on August 19, 2011, over one year after TILA's rescission period had run. Raad cannot rely on TILA as his basis for rescission. His claim for damages is similarly time barred. 15 U.S.C. § 1640(e) (stating that claim for damages must be brought "one year from the date of the occurrence of the violation").

C.   **Raad's Right to Rescission of the August 2007 Mortgage Under the MCCCDA**

Massachusetts has adopted its own version of TILA known as the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"). Mass. Gen. L. c. 140D, § 1 et seq. "[B]ecause [the statutes] are substantially similar, we construe the Massachusetts credit statute

---

[3] A seemingly fatal problem for Raad's claim of rescission based on TILA is that "a Massachusetts resident can bring a claim for damages under § 1640 of TILA, but cannot rescind a credit transaction under § 1635 of that statute; he or she can pursue that remedy only under [M]CCCDA." In re Desrosiers, 212 B.R. 716, 722 n.6 (Bankr. D. Mass. 1997). See Belini v. Washington Mut. Bank, FA, 412 F.3d 17, 26-27 (1st Cir. 2005); In re Cromwell, 461 B.R. 99, 116 & n. 92 (Bankr. D. Mass. 2011) (explaining preemption interaction between MCCCDA and TILA). However, since Raad also seeks damages, the Court addresses the TILA claim.

7

'in accordance with' TILA absent reason to do otherwise." In re Fuller, 642 F.3d at 241 (quoting McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 422 (1st Cir. 2007)). One notable difference between the statutes is that MCCCDA establishes a maximum four-year window to seek loan rescission and damages. Mass. Gen. L. c. 140D, § 10(f). This expanded window is applicable, for example, where the lender has failed to provide all "material disclosures." The Supreme Judicial Court held that "any understatement of a finance charge beyond the de minimis range is a material nondisclosure," Mayo v. Key Fin. Servs., 424 Mass. 862, 865 (1997). Accordingly, the amended complaint alleges a plausible claim that the inconsistencies in the finance charge constitute such defects in material disclosures.

Relevant to this case, however, is that neither the Massachusetts Supreme Judicial Court nor the First Circuit appears to have determined the key event that must occur within MCCCDA's four-year window in order to rescind a covered transaction. It matters in this case whether the key event is that written notice be given to the lender (here, as alleged, May 23, 2011, and within the four year period), or that an action be brought in court (here, August 19, 2011, and just outside the four year period). Federal courts are split as to the applicable end date in the similarly worded TILA. Compare, e.g., Rosenfield v. HSBC Bank, USA, 681 F.3d 1172, 1182 (10th Cir. 2012) (requiring lawsuit to be commenced within prescriptive period) with Gilbert v. Residential Funding LLC, 678 F.3d 271, 276-278 (4th Cir. 2012) (requiring only written notice within prescriptive period). With such a split of opinion, and no briefing on the matter from the litigants, the Court declines to dismiss the MCCDA claims on this basis where written notice was given within the four-year time period.

Even were the Court to agree that Raad falls within the four-year period under MCCCDA, a number of courts require that the borrower allege or show the ability to tender the

consideration received to rescind the loan. See Wells Fargo Bank, N.A. v. Jaaskelainen (In re Jaaskelainen), 407 B.R. 449, 450 (D. Mass. 2009) (Zobel, J.) (noting that "although the First Circuit has not spoken, the majority of courts to consider the issue agree that courts have the equitable power to condition rescission on tender by the borrower"); see also Am. Mortg. Network, Inc. v. Shelton, 486 F.3d 815, 820-21 (4th Cir. 2007); Yamamoto v. Bank of New York, 329 F.3d 1167, 1172-1173 (9th Cir. 2003); see generally Thomas B. Merritt, 35A Massachusetts Practice, Consumer Law § 14:31 (3d ed. 2010) (observing that "[c]ourts have, in fact, frequently conditioned rescission on the consumer's return of the monies advanced by the creditor"). But this view is not universally held, even within this Circuit. Another district judge has recently affirmed the ruling of a bankruptcy judge who had disagreed with the view that a court can require a showing of an ability to tender. Cromwell, 2012 WL 4127910, at *8, aff'g In re Cromwell, 461 B.R. at 129-136 (arguing that in bankruptcy the effect of requiring tender is to unfairly discriminate between creditors and noting that equitable power to require tender is beyond the power of the bankruptcy court). Many of the concerns of Cromwell, including unfair discrimination amongst creditors and the bankruptcy court's limitations on its equitable power, are not present here.

Raad argues that MCCCDA's plain language does not require the obligor to be able to tender consideration to the creditor to rescind a loan. Raad is correct that the statute by its plain terms seems to provide for a non-simultaneous rescission process in which the creditor tenders first when the obligor wishes to rescind the transaction. Mass. Gen. L. 140D, § 10(b). However, the plain terms of the statute also state that "[u]pon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor . . . ." Id. (emphasis added). It destroys the equitable concept of rescission to allow the obligor to obtain the benefit

9

of a so-called "rescission" while ignoring his ability to carry through with his obligation. The Court further notes that "the procedures prescribed by this subsection [Mass. Gen. L. 140D, § 10(b)] shall apply except when otherwise ordered by a court." Id. The scope of the Court's discretion regarding the procedure for rescission is borne out by the applicable MCCDA regulations under 209 C.M.R. § 32.23(4). As the First Circuit made clear in Large, 292 F.3d at 54-55, whether a debtor has rescinded a transaction, where the obligor contests same, is for the Court to determine. Cromwell, 2012 WL 4127910, at *9 (noting that under Large, "courts in this circuit must acknowledge that rescission is only appropriate where it is undisputed or a judge finds the necessary conditions [for rescission]"). Accordingly, whether a consumer "rescinds a transaction" is a determination that is not automatic under the MCCDA, Mass. Gen. L. c. 140D, § 10(b) and 209 C.M.R. § 32.23(4)(a). The effect of such rescission—i.e. "the security giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount", id.—does not occur until the conditions for such rescission have been met.

The procedure for rescission, namely the procedure under Mass. Gen. L. c. 140D, § 10(b), 209 C.M.R. § 32.23(4)(b) & (c), shall apply "except when otherwise ordered by a court." Therefore, whether a transaction is rescinded (and the effect of same on the obligor's security interest) is not consummated until the procedure for doing so is followed including such procedure as otherwise ordered by this Court. Accordingly, working within the bounds of the discretion provided under the MCCDA and the Court's general equitable power, the Court shall require Raad to demonstrate his ability to tender the value of consideration originally received in order to rescind the August 2007 Mortgage transaction. Here, the Court is concerned that Vanderbilt's assertion is correct that Raad perhaps "is not really seeking rescission, but rather he is seeking to avoid his loan obligation altogether while keeping his house." D. 8 at 8. Raad

requests as relief "a decree discharging the August 2007 mortgage" rather than a true unwinding of the transaction. D. 5 ¶ 39.[4] Accordingly, the Court will order Raad to amend his complaint "plausibly narrating a claim for relief" of rescission – which means plausibly alleging facts regarding Raad's ability to fulfill his obligations in a mutual return of consideration –to proceed on this claim. The Court further notes that over a year has passed since Raad commenced his lawsuit in state court and that in the interest of judicial economy, and fairness to the parties, there is no good reason to spend further resources determining whether Raad is entitled to rescission if he cannot effectuate rescission if he prevails.[5]

### D. Raad Has No Right of Recoupment

Raad claims that his right to rescind the August 2007 Mortgage transaction "may be exercised . . . by way of recoupment as a defense to foreclosure." D. 5 ¶¶ 24, 32. "A right in recoupment is akin to a defense, which arises from some feature of the transaction upon which the plaintiff's action is grounded. As developed [in Massachusetts] common law, the doctrine of recoupment permits the crediting of reciprocal rights against each other where those rights arose under the same transaction, typically the same contract." In re DiVittorio, 670 F.3d 273, 289 (1st

---

[4] In this sense, the facts alleged here are different from Cromwell, 2012 WL 4127910, at *8, that concerned the priority of the Bank's interest in the property, whether as an unsecured interest (if the transaction was rescinded) or a secured interest (if the transaction was not rescinded). Given the circumstances alleged here, this Court requires, pursuant to discretion provided in MCCDA, modification of the sequence of the procedure for rescission given the parties' equitable interests and the fact that Raad will inevitably need to tender to effectuate the rescission he seeks.

[5] Though Vanderbilt does not raise this argument, the Court further notes that even if the right of rescission is available, it would perhaps be applicable at most "to the extent that the [August 2007 Mortgage refinance transaction] exceeds the unpaid principal balance [resulting from the April 2007 Mortgage purchase money transaction], any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation." Thomas B. Merritt, 35A Massachusetts Practice, Consumer Law § 14:14 (3d ed. 2010). Generally, the right to rescind in MCCCDA is not applicable to a "residential mortgage transaction" including refinances, at least with the same creditor, where there are no additional monies advanced to the obligor. Mass. Gen. L. 140D, § 10(e)(1). In other words, it seems here that Raad's "right to rescind only applies to the new amount financed that exceeds the principal balance plus any earned unpaid finance charges." Cromwell, 461 B.R. at 118. Here, Raad's right to rescind could be limited to the "$19,407.66 shown on the 'Settlement Statement' as being paid to Raad." D. 5 ¶ 8F. Raad potentially may not be entitled to rescind the remaining balance.

Cir. 2012) (quoting In re Fidler, 210 B.R. 411, 420 (Bankr. D. Mass. 1997), vacated in part on other grounds, 226 B.R. 734 (Bankr. D. Mass. 1998) (internal quotations omitted)).

Here, fatally, Raad does not bring his claim for recoupment as a defense. Raad argues that his recoupment claim is proper given Vanderbilt's "threat[] to foreclose the [August] 2007 Mortgage." D. 9 at 10. The threat of a non-judicial foreclosure does not constitute an action, to which Raad could respond by filing an action for recoupment in court. In re DiVittorio, 670 F.3d at 289 n. 12 (citing Kelly v. Deutsche Bank Nat'l Trust Co., 789 F. Supp. 2d 262, 266-67 & n. 6 (D. Mass. 2011) (holding that a plaintiff's action for rescission in response to non-judicial foreclosure proceedings did "not assert[] recoupment as a defense," but rather was an "attempt[] to use [recoupment] to obtain affirmative relief (cancellation of his debt)")).

Raad also asserts that after he filed his present case, "it appears that . . . Vanderbilt commenced a Soldiers and Sailors action in the [Massachusetts] Land Court." D. 9 at 10. Raad cursorily argues that his recoupment claim is a defense to that later action. Even had Raad provided any further details regarding that action to the Court, recoupment cannot be asserted as a defense to an action that did not yet exist when recoupment was sought.

### E.    Raad is Not Entitled to a Declaration of Amount Owed

Raad seeks a declaration of the amount owed under his August 2007 Mortgage. Raad has not pled sufficient facts to allege that a case or controversy exists as to the amount owed. Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995) (noting that a "federal court [may] grant declaratory relief in a case of actual controversy [but that] the courts, not the litigants, ultimately must determine when declaratory judgments are appropriate and when they are not"). Raad does not allege any facts suggesting that there is an actual dispute as to the amount currently due on his mortgage, such as how much Raad believes is owed and how

much Vanderbilt is claiming. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (noting that a "complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Accordingly, the Court dismisses as much of the complaint as seeks declaratory relief as to this matter.

  **F. Even if Raad Had a Contractual Right to Receive New Disclosures as Part of His February 2009 Modification, Rescinding the Modification Will Not Provide Raad with a Claim Upon Which the Relief Sought Can Be Granted**

Raad claims that the language contained in the "Notice of Right to Cancel," and quoted supra, created a contractual right for Raad to "cancel [the February 2009 Modification] transaction without cost, within three business days from . . . the date [Raad] received [his] Truth in Lending disclosures," D. 5 ¶ 12, and that he never received these disclosures.

Even assuming that the contractual language supplied by Vanderbilt as part of its February 2009 Modification may have granted Raad the right to cancel the February 2009 Modification until Raad received Truth in Lending disclosures, as Raad argues, the effect of the cancellation of the February 2009 Modification would be to return the parties to the status quo ante before the February 2009 Modification transaction took place: Raad and Vanderbilt would return any consideration received and the loan terms would revert to what existed before the loan modification. Here, the terms of the August 2007 Mortgage and loan would still apply.

It appears that Raad intended with his August 15, 2011 letter, purportedly cancelling the February 2009 Modification, to cancel the August 2007 Mortgage transaction and not merely revert his loan to its pre-modification terms. D. 9 at 3 (arguing that by rescinding the February 2009 Modification he will "rescind . . . consequently, by reference, the 2007 Mortgage"). However, by the plain language of Raad's own amended complaint, D. 5, the terms of the February 2009 Modification permitted only the cancellation of the February 2009 Modification.

Accordingly, the Court dismisses that portion of Raad's claim that rescission of the February2009 Modification will also rescind the August 2007 Mortgage.[6]

**V.      Conclusion**

Vanderbilt's motion is GRANTED in part and DENIED in part.  Accordingly, the Court DISMISSES all of Raad's claims except Raad's claim for rescission and damages under MCCCDA relating to the August 2007 Mortgage and, as to that rescission claim, ALLOWS Raad to amend his complaint within fifteen days from the date of this order plausibly stating facts that he is able to tender all consideration that he received, or its reasonable value, to Vanderbilt.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[6] Because the Court agrees that Raad's TILA claims are time-barred and that Raad must be able to tender consideration to obtain rescission, the Court does not reach Vanderbilt's arguments as to the adequacy of the August 2007 Mortgage disclosures.  In light of the Court's ruling regarding the February 2009 Modification, the Court does not reach the argument that the 2009 transaction is exempt from requiring new disclosures.